WINSLOW BATES *versus* ROBERT ENRIGHT.

The wife of A., having been convicted of selling spirituous liquors in violation of law, was, in default of payment of fine and costs, committed to prison. While in prison, and as a condition of her release, she was required, under R. S., c. 175, to give her promissory notes, payable to the county treasurer, his successor in office or his order, for the amount of fine and costs, and for her board while in prison. These notes were indorsed in blank by the payee to the plaintiff, who commenced a suit upon them against A., the husband. The Court *held*, that the action could not be maintained and ordered a nonsuit.

ON FACTS AGREED.

ASSUMPSIT on two promissory notes. The cause was submitted to the full Court upon the following agreed facts.

The first note declared on is dated April 2, 1849, payable to Samuel A. Morse, treasurer of the county of Washington, or his successor in office, or his order, signed by Hannah Enright, wife of the defendant, for the sum of fifty-three dollars, payable on demand with interest, and indorsed in blank by Samuel A. Morse, treasurer.

This note was given by the said Hannah Enright while in

prison; having been committed upon a mittimus issued by a magistrate upon the failure of the said Hannah to pay a fine and costs, imposed by him, for selling spirituous liquors contrary to law. Said note was given for the fine and costs, and for her support in prison. The other note declared on was signed by the said Hannah Enright, payable on demand with interest to George Walker, treasurer of the county of Washington, or his successor in office, or his order, and indorsed in blank by said Walker in his capacity of treasurer. This note was given by said Hannah while in prison; she having been committed upon legal conviction for the third time before a magistrate for selling spirituous liquors in violation of law. She was sentenced to imprisonment in the common jail for the term of six months, and to pay the fine and costs of prosecution. Said note was given for fine, costs, and her board during the term of sentence.

Both of said notes were demanded of the said Hannah under the 175th chapter of the Revised Statutes of 1841 as a condition of her liberation.

The Court were authorized to draw such inferences from the foregoing facts as a jury might, and upon them to enter such judgment as the law applied to the facts of the case should require.

*George F. Talbot,* for plaintiff.

1. The action on the note is properly brought against the defendant, the husband of Hannah Enright, the person who signed it. A husband is liable for all his wife's contracts. "It is a strict rule of law that throws upon a husband the obligation of all his wife's contracts during coverture." 2 Kent's Com. 143, 144.

2. The note in suit was negotiable and was legally transferred to the plaintiff. It has ever been the policy of the law to promote and not to restrict the negotiability of promissory notes. The statute of 3d and 4th Anne made promissory notes payable to a person and to his order, or to bearer, negotiable, like inland bills, according to the custom of merchants. That statute, says Kent, has been generally adopted in this

country, either formally or in effect, and promissory notes are every where negotiable. 3 Kent's Com. 72; Story's Promissory Notes, 7.

The notes in this case were given in payment of fines and costs imposed by law and for support in prison at the expense of the State. They were given to the county treasurer, as an officer of the government, and in trust for the State. They were, therefore, given to the government in payment of a debt due the government, and notes given to the government, are negotiable, even if not made payable to bearer or order. Judge STORY, in his work on Promissory Notes, page 45, says: "Indeed the rule," (i. e. of restricting negotiability,) "never did apply to promissory notes, or bills of exchange, assigned to the king or government by the payee, although not originally payable to bearer or order, for those, like other choses in action, always were assignable to the king or government upon principles of public policy, so as upon assignment thereof to be suable in the name of the king or government. And bills of exchange and promissory notes originally made payable to the king or government, are, upon the like policy, held assignable to third persons without any words of negotiability in the instrument; and cites, *United States* v. *Buford*, 3 Peters, 30; *United States* v. *White*, 2 Hill, (N. Y.) 59.

3. In answer to the defence that the notes were given for a larger sum than was legally due. This defence, as well as that of illegality and duress subsequently considered, is not open to the defendant. The notes have been indorsed, and for aught that appears, are in the hands of an innocent holder for value. Nothing is more familiar than the principle, that under such circumstances the consideration of the notes cannot be inquired into.

If this defence is open to the defendant, it is good only for the purposes of reducing the plaintiff's claim upon the notes, by the amount of the excess of the actual debt, as the items of the consideration are all specifically set forth. Bayley on Bills, 494–5.

The statute, under which this note was taken, provides:

"When any person convicted of a criminal offence shall be sentenced to pay a fine and costs, or costs alone, and stand committed until sentence be performed, if the sentence be not complied with by the payment of the sum due, within thirty days next following, the sheriff may liberate him from prison if committed for no other cause, *and if he be unable to pay such fine and costs*, upon his giving his promissory note for the amount due," &c., &c.

The expense of board in prison was also legally chargeable. The Act of which chap. 175 of the Revised Statutes is a revision, viz., c. 83, § § 1 & 2, Act of 1821, allowed persons imprisoned for non-payment of costs to be sold to service for that purpose. When the liberty of a citizen has become forfeited by the commission of a crime, whereof he has become duly convict, the State assumes the right to control his employment. Thus, convicts in the State prison are required by their labor not only to pay the expense of their maintenance but a revenue to the State over and above this maintenance. Houses of correction, being in the theory of our system of criminal law the permanent places of minor punishment, as the State's prison is the place of graver punishment, are regulated upon the principle of compulsory labor, whereby persons sentenced to them are required to pay the expense of their own support. Poor debtors in prison become a charge upon the creditor committing them or the towns where they have their legal settlement. Persons committed to prison on complaint, and awaiting a requisition to be taken to another State for trial, may have the costs of their board in prison charged to the person upon whose complaint they were arrested. But § 16 of c. 152, R. S., provides that "the expenses of supporting prisoners committed by due process of law, and *unable to support themselves*, in any jail, upon charges or conviction of crimes and offences committed against the State, shall be refunded by the State; the jailer in each county shall render on oath to the county commissioners at each session thereof an account of all such expenses, stating the time when each prisoner was committed, for what offence, how long held,

and if his term has expired when discharged, and shall exhibit the warrants of commitment and discharge; and the jailer *shall credit all moneys and effects received or to be received of the prisoner* or of other persons on his account; and the Court, on due examination into the nature of the accounts *and the ability of the prisoner to refund any part of such expenses,* shall order such sum as they think reasonable to be paid to the jailer, not exceeding one dollar a week, from the county treasury."

Here the State assumes the payment only of the board of prisoners "unable to support themselves," and requires the jailer to credit all payments of money or property received from the prisoner, and then only pays the bill for his support in case he is adjudged not able to pay at some future time.

But if the expense of board in prison was not legally taxable to defendant, it was a perfectly good consideration for her note. Suppose she could not have been compelled to pay it as a condition of release, it was something beneficial, — something she had received, and was a good consideration for the promise in her note. An act lawful in itself, and which is for the benefit of one party, or to the prejudice of another, constitutes a sufficient consideration to support a promise. *Cabot* v. *Haskins,* 3 Pick. 83. Story, in his work on Promissory Notes, § 186, says: "A valuable consideration in the sense of the law may in general terms be said to consist, either in some right, interest, profit or benefit, accruing to the party who makes the contract, or some forbearance, detriment, loss, responsibility, or act, or labor, or service on the other side. And if either of these exists, it will furnish a sufficient valuable consideration to sustain the making or indorsing a promissory note in favor of the payee or other holder." * * * "A preëxisting debt is equally as available as a consideration, as is a present advance or value given for the note. Even the settlement of a doubtful claim preferred against the party will be a sufficient and valid consideration without regard to the legal validity of the claim if it be fairly made."

4. There was a legal consideration for said notes; for a part of said notes, i. e. fine and costs, without question, and for the rest a valuable consideration. There was certainly no illegality in the consideration. There is nothing illegal in a discharged prisoner promising to repay to the State the expense of his support in prison, even if he was not compelled by law to do so. The consideration of a note can be illegal only because it is against the general principles and doctrines of the common law, as contracts against sound morals, public policy, public rights or public interests, and because it is specially prohibited or interdicted by statute. These are all the kinds of illegal considerations allowed by Mr. Story. Promissory Notes, § 189.

Nor were the notes obtained of defendant under duress. She was legally imprisoned. Legal imprisonment is not duress. Chitty on Contracts, 167, 168; *Richardson* v. *Duncan*, 3 N. H. 518; *Watkins* v. *Baird*, 6 Mass. 511; *Crowell* v. *Gleason*, 10 Maine, 325; *Eddy* v. *Herrin*, 17 Maine, 338.

*Bion Bradbury*, for defendant.

1. In reference to the second note, I maintain that the law gives the sheriff no authority to liberate a poor convict in any case where the sentence conjoins the payment of a fine and costs *with imprisonment*.

This authority, if it exists, is derived from the R. S., c. 175; but the language of that chapter restricts the power to cases where the sentence is "to pay a fine and costs, or costs only."

This note, then, is illegal and void.

2. Both notes were given under duress, and are, therefore, void.

The case shows that these notes were demanded by the sheriff as a condition of release. They were, therefore, given under the fear of detention in prison. The notes demanded included charges which were illegal.

It is submitted that these facts bring this case within the rule of *Whitefield* v. *Longfellow*, 13 Maine, 146.

3. The notes taken, being for a larger sum than the sheriff was authorized to require, were illegal and void.

The sheriff's power in reference to cases of this description is derived from R. S., c. 175, § 1. That statute, as will be seen upon inspection, only authorizes the note to be taken for the amount for fine and costs.

Both these notes include the convict's board while in prison.

Now it is provided in R. S., c. 205, § 22, that, in cases of imprisonment under the laws imposing penalties for the sale of intoxicating drinks, the keeper of the prison shall receive his compensation for the board of the convict out of the county treasury under the direction of the county commissioners.

4. This action, being brought in the name of Winslow Bates, as indorsee of the notes, cannot be maintained, because the county treasurer had no power to negotiate or indorse them. They are not negotiable paper; they are *sui generis*, the mere creatures of statutory enactment, and regulated and controlled by statute law.

The law directs that they shall be made payable to the county treasurer. R. S. of 1841, c. 175, § 1.

It provides that in case judgment shall be rendered upon any such note in any action brought thereon *by such treasurer*, the same proceedings may be had on the execution as in other cases of contract. R. S., c. 175, § 3.

It provides that the sheriff, as often at least as once in six months, shall deliver such notes to the county treasurer. R. S., c. 152, § 28.

It provides that, at the next session of the county commissioners, the county treasurer shall lay before them a schedule of such notes. R. S., c. 152, § 29.

It provides that the county commissioners shall, from time to time, examine such notes, and order the county attorney to take legal measures for their collection, and they may authorize the treasurer to compound or cancel them upon such terms as the board may direct. R. S., c. 152, § 30.

The power of the sheriff, treasurer, commissioners and attorney of the county over these notes is regulated, limited, and restricted by the laws of the State.

This action is not brought by the county attorney, nor un-

der his direction. It is not instituted in the name of the county or the treasurer. It is brought in the name of the indorsee of the notes, who claims them as his own.

The position, assumed by plaintiff's counsel, that the husband is liable for all the wife's contracts during coverture, is true so far only as she has a right to contract. But she can make no contracts during coverture binding upon the husband except for necessaries. 2 Kent's Com. 146.

The theory of the common law is, that the wife has no legal, independent existence during the period of coverture, and that she is absolutely *sub potestate viri.*

So the husband is liable for the torts or frauds of the wife, but if the tort or offence be punished criminally by imprisonment, unless there be evidence of coercion or command by the husband, he is not liable. 2 Kent's Com. 149–50.

Blackstone, (vol. 1, page 443,) says: "In criminal prosecutions, it is true, the wife may be indicted and punished separately; for the union is only a civil union."

If a wife commit an indictable offence without the presence or coercion of her husband, she alone is responsible for the offence. *State* v. *Jones,* 2 Blackf. 484.

*George F. Talbot,* for plaintiff, in reply.

MAY, J. — The facts in this case show that the wife of the defendant was in prison for the non-payment of certain fines and costs, which had been imposed upon her by a magistrate, upon conviction for offences committed by her against the statute prohibiting the sale of intoxicating drinks. The notes in suit being required were given by her to procure her release from such imprisonment. It is contended by the counsel for the plaintiff that these notes, being authorized by the Revised Statutes, c. 175, § 1, are valid, and that the defendant, as husband of the maker, is liable therefor.

Are the notes in controversy valid contracts as against the defendant's wife? By her marriage the right of a wife to all her personal estate, at common law, vests in her husband, and he becomes liable to make provision for her suited to her

necessities, and his degree in life; but while he is not guilty of any cruelty, or conduct which will justify her in leaving him, and is willing to provide her a home, and all reasonable necessaries, he is not ordinarily bound to furnish them elsewhere. 2 Kent's Com. 147. She will, however, in case she commit adultery or elope, forfeit all claim upon her husband to make such provision. *Hunter* v. *Boucher*, 3 Pick. 289; *McClutchen* v. *McGahay*, 11 Johns. 281. But while she is free from any impropriety which by the rules of law will deprive her of these rights, the obligation of the husband suitably to provide for her, will continue, whether she reside in his family or elsewhere; and if he fails to do so, or if he turns her away without a justifying cause, his very treatment or neglect will be a general letter of credit which will authorize her to contract in his name for such necessaries as her situation requires, and his condition in life renders proper. Bacon's Abr., 1st Amer. Ed., vol. 1, p. 488, Letter H; *Hancock* v. *Merrick*, 10 Cush. 41; *Kimball* v. *Keyes*, 11 Wend. 33. Even in cases of misconduct on her part the husband will be held liable to third persons, for necessaries furnished her, unless furnished under such circumstances that the person providing them, had notice, or may reasonably be presumed to have had notice, of the circumstances under which she was living. *Norton* v. *Fazen*, 1 Bos. & Pul. 226. If, however, the wife voluntarily separates herself from her husband's home, such separation will be sufficient to put all persons, supplying her necessities, upon inquiry as to the cause and circumstances of her living apart from him; and if they supply her without doing so, they will do it at their peril. *McClutchen* v. *McGahay*, before cited. But involuntary separation, without the wife's fault, and in some instances where, by operation of law, it exists through her fault, will not relieve the husband from his legal responsibility to provide for her. If, therefore, she be imprisoned for felony, he will be liable for necessaries. 2 Starkie's Ev., part 4, p. 698. But while she cohabits with her husband, such cohabitation will be sufficient evidence of his assent to her contracts for necessaries,

obtained on his credit, and of her authority to bind him therefor as his agent. *Furlong* v. *Hysom*, 35 Maine, 332. Such are some of the rights of the wife, and such are some of the duties and liabilities of the husband, as they exist at common law, for her support and protection; and these are so ample that that law, for these and other reasons springing from the conjugal relation, deemed it unnecessary that the wife should have ability to contract on her own account, and therefore debarred her from such power. *Shaw* v. *Thompson*, 16 Pick. 198. So completely has the common law incapacitated a *feme covert* to contract in her own name, that she cannot, even in cases where her conduct has absolved her husband from his obligation to provide for her, bind herself by note or contract for the payment of such necessaries as her situation may require. *Marshall* v. *Rutton*, 8 Durn. & East, 545. Having no power or capacity to contract, she cannot sue or be sued with or without her husband on her contracts made during coverture. *Howe* v. *Wildes*, 34 Maine, 566, and authorities there cited. The notes declared on are, therefore, at common law, void contracts as against the defendant's wife; and, being void, the defendant cannot under that law be held liable thereon.

The question then arises whether the notes in suit are valid as against the defendant's wife, under the statute c. 175, § 1, before cited; and if so, whether that fact will make the defendant responsible in this suit therefor. Does, then, that statute give to a married woman, who is in prison and unable to pay the fine and costs for which she is imprisoned, a capacity to bind herself by note for the amount due, for the purpose of procuring her release? If she has not such capacity, then no mode seems to be provided by law for her discharge; and her imprisonment may be for life, unless her husband or some friend volunteers and pays the amount required as the condition of her release. By the statute the sheriff is authorized to take the note of the convict only who is imprisoned and unable to pay his fine and costs. In terms, it applies to *"any person convicted of a criminal offence;"* and in favor of

personal liberty, there seem to be good reasons for applying it to married women and minors as well as to others. No reason is perceived why they should be excluded from its benefits. If the notes in suit are not the notes of the defendant's wife, then they are not statute notes; and, if they are her notes, then they are not the contracts of her husband, and, in the absence of any statute creating such liability, he can only be held responsible for their payment upon the ground of some legal obligation incident to the marriage relation.

By the common law there are many cases where such an obligation on the part of the husband, to pay and discharge the debts and liabilities of his wife, is implied. He is liable for her debts contracted before marriage. He is also liable with her for her torts and frauds, committed by her during the coverture, where the remedy for the tort is only damages by suit or fine. 2 Kent's Com. 149. So, too, he may be held liable in an action upon a penal statute, to recover a forfeiture incurred by her, especially where such forfeiture goes to the plaintiff, and is in the nature of damages for injuries sustained by reason of her tortious acts. *Harbroach* v. *Weaver*, 10 Johns. 247. But when the wife is prosecuted by indictment, for an offence to which her husband is in no way privy, he shall not be included in it, because it is a proceeding grounded merely on a breach of the law. 1 Bacon's Abr. 487, and cases there cited. It is also said, in a note on the same page, that the husband is not liable to pay the forfeiture recovered on an indictment against the wife. It has also been held, that the husband is liable with the wife to an action of debt or *scire facias*, upon a judgment recovered against her for costs during the coverture, but his property cannot be taken, nor his body arrested, upon an execution against her alone. *Haines* v. *Corliss*, 4 Mass. 659.

In the cases before cited, where the husband is held responsible for the debts, torts and liabilities of his wife, his obligation arises principally from the fact that he is supposed to have in his hands, by virtue of his marriage, all the wife's per-

sonal estate, so that she is destitute of the means wherewith to pay them or make satisfaction. By our present statutes the wife is placed in a very different position. Her property, held by her at the time of the marriage, does not thereby become the property of the husband; and she is allowed to retain, as against his creditors, all which may subsequently come to her "by direct bequest, demise, gift, purchase or distribution," unless the same came to her from her husband. Stat. 1844, c. 117, § 1. She is also authorized to commence, prosecute or defend in her own name, or jointly with her husband, any suit at law or in equity, in relation to all such property. Stat. of 1848, c. 73, § 1.

If the notes, then, now in suit, may be regarded under the statute as valid contracts of the wife, since the principal reasons which were deemed sufficient at common law to create a legal liability on the part of the husband, to pay and discharge her legal liabilities, have ceased to exist, we are of opinion that they should not be now applied for the purpose of extending the husband's liability to cases in which they were never before applied, even though by the principles of that law the cases might have fallen within it. The common law liability of the husband, has never been extended to any contracts of the wife made during coverture, for the simple reason that by that law, as we have seen, no such contracts could exist. The notes in suit, if valid as against the wife, under the statute relied upon as authorizing them, having been given before the passage of the statute of 1844, c. 117, § 1, before cited, are only the contracts of the wife, and not the contracts of the husband; and she alone can be held liable thereon, although for the sake of the remedy, the husband might perhaps be joined with her in the suit, as he now may be in actions upon her contracts before coverture, in which case execution can only be levied upon her estate. Stat. 1852, c. 291, § 1. If the notes are her contracts, no action can be maintained upon them against the defendant alone.

It is, however, contended, that if the notes in suit are not valid contracts as against the wife, they are nevertheless valid

as against the husband. It is urged that this is so, because the consideration of the notes is made up of items for which the defendant was legally responsible before the notes were given, and the authority of his wife to execute them in his behalf may therefore be presumed. It is true, as we have seen, that he might have been responsible for her board while in prison, the nature of her offence not being such as to deprive her of her claim upon him for the necessaries of life while there. But so far as relates to the fine and costs, which went into the note, we do not find, in the examination we have made, nor in the authorities before cited, any principle upon which he was liable. These were imposed *upon her* as the sentence of the law, and, so far as appears, for offences in which he was in no way implicated. They were imposed upon her, not as damages for injuries sustained by her tortious acts, but simply as a punishment for her crimes; and it is not apparent to us upon what principles the husband can be made to bear that punishment. No person can be made to suffer twice for the same offence; and, in our judgment, any rule of law, by which an innocent person could be made to suffer, for an offence which he did not commit, by reason of his relation to the offender, would be equally unjust. Yet, such would be the direct effect, if the defendant could be held responsible, against his will, to pay the fine and costs imposed upon his wife.

But, if it could be made to appear, that the defendant was liable at common law, for the items which constitute the consideration of the notes, this fact would not necessarily make him a party to the notes. According to all the authorities which have been examined, the husband's liability for necessaries rests wholly upon his supposed assent to her contracts, made upon his credit, or rather upon his promise implied from his marital duties and the circumstances of the case; and his liability for her torts and upon judgments recovered against her during the coverture, results from an obligation imposed by law; but such promise or legal obligation arises only to such persons as furnish the necessaries, or are injured by her

torts, or are her judgment creditors, and cannot be enforced in the name of an assignee. The mere right of the wife to procure necessaries on the credit of her husband, or any other liability arising on his part for her, will not authorize her to give his negotiable notes therefor, especially for a past or executed consideration.

The simple fact of being a man's wife does not confer authority upon her to sign her husband's name to any contract, (*Shaw* v. *Emery*, 38 Maine, 484,) and she cannot bind him by signing her own signature, except it be in cases where she is authorized to use her own name as his, or where his assent to such use may be fairly inferred; as where a note or draft is made payable to her with her husband's consent, and afterwards, by his authority, either express, or implied from accompanying circumstances, is indorsed by her in her own name. In such a case the note or draft, though literally payable to her, is in fact payable to her husband, and her name, in legal contemplation, stands for his. *Hancock Bank* v. *Joy*, 41 Maine, 568.

In the case at bar, so far as appears from the statement of facts, the notes were signed by the defendant's wife without his knowledge or consent, and they cannot, therefore, be regarded as binding on him. If she had signed the defendant's name instead of her own, he could not have been held without proof of her authority; and it has been held, in a case where the wife signed her husband's name, that he was not bound, because her authority to make the note was not referred to, or recognized upon its face, neither in the body of it, nor in the signature. *Minard* v. *Mead*, 7 Wend. 68.

In view of all the facts, we are satisfied that this action cannot be maintained. *Plaintiff nonsuit.*

TENNEY, C. J., and HATHAWAY and GOODENOW, J. J., concurred in the result.

APPLETON, J., concurred.